IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARCELA ABARCA, *Plaintiff,* | § § § | |
| v. | § § | Civil Action_____ |
| HOUSTON INDEP. SCH. DIST. *Defendant.* | § § § § | |
| | § | **JURY** DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Comes Now Plaintiff Marcela Abarca ("Plaintiff") complaining of Defendant Houston Independent School District ("HISD"); and for cause, Plaintiff would show the following:

## PARTIES

1. Plaintiff is a trained and skilled public school teacher who resides within the geographical parameters of the Southern District of Texas.

2. Defendant HISD is a public school district with its principal place of business being within the City of Houston, in Harris County, Texas; HISD may be served with summons herein by serving its

1

Superintendent with summons at 4400 W. 18th Street, Houston, Texas 77092-8501.

## JURISDICTION

3. This Court has federal question jurisdiction because the action arises under the Civil Rights Act of 1964, Title VII § 701, 42 U.S.C § 2000e, et. seq, as amended by the Civil Rights act of 1991, Title I, §§ 104, 109(a).

## NATURE OF ACTION

4. This is a religious discrimination and retaliation case arising under Title VII, Title 42 U.S.C. § 2000e *et. seq.*

## CONDITIONS PRECEDENT

5. All conditions precedent to jurisdiction have occurred or have been complied with in the Equal Employment Opportunity Commission (EEOC). A charge of discrimination was filed with the EEOC within three hundred days of the acts complained of herein and Plaintiff's Original Complaint was filed within ninety days of Plaintiff's receipt of the EEOC's issuance of a right to sue letter.

## FACTS

6. Plaintiff is a Jehovah's Witness, and has been since a child, born to parents who belong to that religious faith.

7. Plaintiff started her teaching career with Aldine Independent School District in September 2016, and taught English for three years.

8. Plaintiff was then hired at HISD's James Madison High School as an English Teacher for the 2019/2020 school year.

9. Plaintiff was interviewed for the position by Ms. Carlotta Brown ("Brown"), Principal for James Madison High School.

9. During the initial interview Plaintiff advised Brown, even before Plaintiff accepted the offered position at Madison High School, she was a Jehovah's Witness and had a very important religious trip planned from October 21, 2019, to November 1, 2019, traveling to New York for a Jehovah's Witness Bible Study.

10. Brown responded saying it would not be a problem if Plaintiff traveled to New York from October 21, 2019, to November 1, 2019, and HISD and Brown could accommodate Plaintiff and not hold her absence for the trip against Plaintiff since it was for an important religious purpose.

11. Plaintiff was instructed that she could use her [earned/paid] vacation days for the trip from October 21, 2019, to November 1, 2019.

### *Shortage in Pay and Altered Records*

12. However, once Plaintiff returned from her trip, she realized she was only paid for four days of the two week pay period, receiving roughly half of her paycheck.

13. Plaintiff also discovered that her application had been altered by someone.

14. Plaintiff reported the shortage to Latonya Hamilton, the Madison Payroll Clerk or "ticket keeper".

15. Plaintiff then reported that the shortage had resulted from someone having altered the coding of her absence from vacation to "Family Illness" which would negatively impact her entitlement to a stipend. .

16. Plaintiff then was summoned by Brown to a meeting with Brown, two Assistant Principals and the Payroll Clerk on or about November 2019.

17. Brown stated to Plaintiff in that meeting that her religious trip was not publicly recognized. Before having left on the religious trip, Plaintiff had provided Brown her entire itinerary including brochures of the religious event; once Plaintiff returned from her trip she had submitted additional brochures and other documents she had received describing the event.

***Plaintiff complained to Brown about the altered records and shortage in pay and Brown said the trip was not recognized, even calling HISD central.***

18. Plaintiff complained stated that Brown had approved the trip as vacation and someone had altered her records and Brown agreed in front of her Assistant Principals and Ms. Hamilton that she had approved the trip, but Brown , Hamilton, and the Assistant Principals denied having altered the official pay records.

19. Plaintiff asked who else could have made the alteration, and no one answered.

20. Brown stated that Plaintiff had signed a contract "Achieved 180 paperwork".

21. That contract states a teacher cannot have more than five days off per semester. This contract has modifications and reasons for a teacher to take more than five days in a semester and religious is one

of them.

22. Brown stated again that Plaintiff's religious observance was not publicly recognized and therefore it does not fall under a religious category.

23. Brown stated for this reason she would address Plaintiff's trip as a vacation opposed to a bible study. Ms. Brown also stated, "this is your religious observance not mine".

24. Brown asked Plaintiff to agree that it is not fair for Plaintiff to get a stipend for not being at work when Ms. Hamilton is here every day, ..and Plaintiff was away for ten days.

25. Plaintiff filed a level one grievance with the district. It went up to level two grievance hearing with the district, which finally reached the level two hearing in June 2020, and HISD ruled in Plaintiff's favor for her to be paid the additional stipend even though Brown stated the trip had been a vacation.

26. Although the level two grievance decision occurred in first week of June 2020, Plaintiff did not receive the stipend pay until end of July 2020.

27. After the district ruled in Plaintiff's favor, Brown started retaliating against Plaintiff with clearly meanspirited and unethical

practices.

28. On December 4, 2020, Plaintiff received three observations, thirty minutes each observation; Brown, the principal would come to Plaintiff's classroom and observe her while she was teaching students both in person and virtually.

29. The normal observation practice was to have an observation *by the Principal* once or twice per semester; however, Brown made three observations of Plaintiff's class in one day.

30. The first of Brown's observations occurred while Plaintiff was attending an annual ARD meeting, *virtually* to reevaluate students in Special Education Services.

31. During the ARD meeting, Plaintiff was in her classroom and Brown came in and started just looking at her-"observing" her.

32. Plaintiff asked Brown to please excuse herself and leave Plaintiff's classroom so she could focus on the Special Education Student's conference.

33. Brown refused to leave and stated she was the Principal, and she could be anywhere she wanted to be, and she stayed looking coldly at Plaintiff during the ARD virtual conference.

34. Brown had the authority to log into the ARD meeting virtually

and not be physically present in Plaintiff's room, personally across from Plaintiff, however, Brown chose to go to Plaintiff's room and observe Plaintiff in person.

35. During the ARD meeting Plaintiff had trouble focusing on the proceedings, because of the way Brown was distracting her, glaring at her.

36. Plaintiff excused herself, took her laptop on which she was participating in the child's Assessment Review Dismissal or ARD meeting and left the room.

37. Hearing steps behind her as she focused on the laptop screen, she turned to see Brown pursuing her.

38. Plaintiff walked into the women's bathroom which had only one stall for privacy, to focus on the ARD meeting.

39. Plaintiff heard Brown, standing outside of the bathroom ask someone to give her a chair.

40. Shortly afterwards, Plaintiff heard a chair scraping across the floor, apparently right in front of and next the bathroom door.

41. At this point Plaintiff began to become frightened and lost focus again, being bullied by Ms. Brown who was apparently guarding the bathroom door.

42. Plaintiff could hear Brown talking to everyone who passed by the restroom she was sitting outside while I was inside and she was trying to have an observation.

43. Humiliated by Brown, Plaintiff walked out of the restroom with her laptop, and walked into the conference room to continue the virtual ARD conference.

44. Brown told Plaintiff she was not allowed to sit in the conference room while attending a conference meeting, and instructed Plaintiff to leave the conference room.

45. Plaintiff gathered her laptop again and returned to her classroom to finish the ARD conference.

46. Once Plaintiff walked into her classroom, she closed her door and put her foot against the door so Brown could not bully her and continue harassing her while she attended the required ARD meeting for the special needs child.

47. Brown called H.I.S.D Police Department and told them to open the Plaintiff's classroom door; however, the H.I.S.D Police did not show up.

48. A second observation that day occurred at approximately 10:15 am, when Brown came back to Plaintiff's classroom to observe her

after the ARD meeting had concluded.

49. Plaintiff had three students whom she was teaching in person while the rest of the class were engaged in virtual learning; Brown stayed for thirty minutes asking the students what they are learning and what they had been taught.

50. The third observation occurred on the same day at approximately 2:35 pm, Plaintiff's last period for the day.

51. In the third observation, Brown walked into the classroom accompanied by Sabrina Cuby-King, Lead Principal for the South Region.

52. During the third observation, Ms. Cuby-King started engaging with Plaintiff asking her questions and interrupting Plaintiff while she attempted to teach and interact with the students.

53. As politely as possible, Plaintiff continued to teach and responding to Ms. Cuby-King only as able when not distrcting to the students.

54. Brown apparently got a kick out of seeing her supervisor needle Plaintiff.

56. At one point Ms. Cuby-King took over the class and redirected the student's attention by asking the students questions; the

10

students realized that something was up and appeared very uncomfortable, looking at Plaintiff for answers, or at least an explanation.

57. On December 14, 2020, Plaintiff filed a grievance with EEOC for the following: Discrimination-Hispanic, National Origin-Hispanic, and Religion- Jehovah's witness and Retaliation.

58. In three short months Plaintiff received 9 observations, 10 memorandums in 9 working days, 2 certified mail and one regular mail all from Brown.

59. Brown ridiculed Plaintiff during the COVID-19 pandemic about Plaintiff's protective garb and mask which she wore to school to protect herself. Plaintiff wore scrub pants, scrub shirt, a mask over her face and a shield around her face and head, covering herself to protect herself and her large family at home.

60. Brown stated her attire was not part of and in violation of the dress code, and she "wrote up" Plaintiff every single day she wore her PPE.

61. Plaintiff received more than ten write-ups for wearing her PPE.

62. On January 8, 2021, Plaintiff was transferred by Brown to the Print Shop.

63.  EEOC conducted a mediation on February 2, 2021, with Plaintiff and Brown.

64. The case did not mediate to settlement.

65. On March1, 2021, Plaintiff was working at the Print Shop.

66. Plaintiff began to have a stress attack and excused herself to go to her vehicle and contact her therapist for teletherapy on her laptop.

67. Mr. Givens was Plaintiff's boss, and he approved her therapy session she was attending on the laptop sitting in her vehicle.

68. During Plaintiff's therapy session Mr. Givens came to her vehicle in the parking lot and advised her she someone was there to see her.

69. Plaintiff excused herself from her therapy and went inside the building to see her visitor, and saw Ms. Lakeisha Ogbor, Assistant Principal at Madison High School.

70. Ms. Ogbor handed Plaintiff an envelope and instructed Plaintiff to sign it.

71. it was 9:36 am; Plaintiff politely replied to Ms. Ogbor she was in middle of a meeting with her doctor, and would read the document then sign it if Ms. Ogbor would return at 10 am.

72. Plaintiff walked back to her vehicle and continued her therapy session; Ms. Ogbar walked up to her vehicle and opened the driver's

side of the door and told her to sign the document.

73. Caught off guard, Plaintiff stated again, politely, she would not sign anything until she had read it, and she would be finished with her conference at 10 am, in a few minutes.

74. Ms. Ogbar wrote "refused to sign" and left.

75. Plaintiff received a letter of termination stating she would be terminated, and she was directed to teach the rest of the semester, and on the last day of school her termination letter was effective, June 14, 2021.

## RESPONDEAT SUPERIOR AND RATIFICATION

76. Whenever in this complaint it is alleged that the Defendant, HISD, did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act and that, at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

## RELIGIOUS DISCRIMINATION

77. Plaintiff hereby re-alleges paragraphs 6-75 of this Amended Complaint.

78. Plaintiff possessed a sincere religious belief that she was obligated to attend the New York Bible Conference, by her own personal view of her religious faith, in October 2019 through November 1, 2019.

79. During the interview with Brown, Plaintiff told Ford about her religious obligation and need to attend the New York Bible Study, and made clear that this need was motivated and required by her religious faith. At that time, neither Brown, nor any other representative of HISD, disputed the sincerity of Plaintiff's religious beliefs, or dispute that her request was motivated by religion.

80. Plaintiff told Brown the exact dates that the conference would be in session and when she would be in attendance and when she would return to Houston and be at Madison to teach; in fact, Plaintiff told Brown that she wanted Principal Brown to understand fully the times that Plaintiff would not be present at Madison before Brown made the final offer of the position to Plaintiff.

81. Brown fully expressed her understanding of the lengtht of the conference and the depth of Plaintiff's commitment and reaffirmed her initial view when she and her staff met with Plaintiff in November 2019.

82. Plaintiff taught her students with passion and skill, and was devoted to the educational environment.

83. Defendant, HISD, by and through Defendant's agents, intentionally engaged in unlawful employment practices involving Plaintiff because she is a devoted.

84. Defendant, HISD, by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of her employment in violation of 42 U.S.C. § 2000e (2)(a). The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her religion.

85. The unlawful employment practices of Defendant, HISD by and through Defendant's agents, had a disparate and adverse impact on Plaintiff because of

her religious observances, practices, or beliefs.

86. Plaintiff alleges that Defendant, HISD by and through Defendant's agents, discriminated against Plaintiff on the basis of religion with malice or with reckless indifference to the protected rights of Plaintiff.

## RETALIATION BY HISD

87. Plaintiff alleges that HISD instituted a campaign of retaliation which included:

- \* Bullying and harassing her and even altering official state or local school payroll records,
- \* Removing Plaintiff from the classroom,
- \* intentionally reprimanding Plaintiff for acts she did not commit,

This retaliation was and is due to Plaintiff exercising her rights by reporting religious discrimination and retaliation.

## DAMAGES

88. Plaintiff has sustained and will continue to sustain the following damages as a direct result of the actions and or omissions of Defendant described hereinabove:

- a. Front pay and back pay in an amount deemed equitable and just to make Plaintiff whole;
- b. Mental anguish, emotional pain, and humiliation;
- c. Physical discomfort;

16

 d. All reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff;

 e. All reasonable and necessary costs incurred in pursuit of this suit, including expert witness fees;

 f. Taxable court costs, and pre- and post-judgment interest;

 g. All other damages to which Plaintiff may be entitled.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Marcela Abarca, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court, together with interest as allowed by law and costs of court. Plaintiff further requests any and all such other relief to which the Plaintiff may be entitled at law or in equity.

    Respectfully submitted,
    */S/ LARRY WATTS*
    Laurence Wade Watts
    SBN 2098100
    Watts & Company Lawyers, Limited
    P.O. Box 2214
    Missouri City, TX 77459
    PH. (281) 431-1500
    FAX (877) 797-4055
    wattstrial@gmail.com

Date: December 21, 2021.